21-2-01605-34
CMP
Complaint
11014110

Space for Filing & Receipt Stamps

E-FILED
THURSTON COUNTY, WA
SUPERIOR COURT
09/14/2021 10:36:36 AM
Linda Myhre Enlow
Thurston County Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF THURSTON

MARY PAT CLEMONS and SCOTT
KENYON LANGE, a marital community,

PLAINTIFFS,

vs.

STATE OF WASHINGTON, DEPARTMENT
OF HEALTH; WASHINGTON STATE
NURSING CARE QUALITY ASSURANCE
COMMISSION; PAULA R. MEYER, in
individual and official capacity; LAURIE A.
SOINE, in individual and official capacity;
AND AUGUSTA M. BAYNE, in individual
and official capacity.

DEFENDANTS

NO. 21-2-01605-34
_____

COMPLAINT

[COMPLAINT INCLUDES ONE
CLAIM FOR VIOLATION OF PUBLIC
RECORDS ACT – RCW42.56]

**COMPLAINT**

1.    This complaint seeks money damages and equitable relief because of Defendant's

tortious and unlawful failure to timely issue a Washington professional license sought by

Complaint                                    1

Plaintiff Clemons resulting in long term loss of employment and community earnings and benefits and other damages to Plaintiffs.  Plaintiffs allege all Defendants acted under color of state law.  Plaintiffs also bring four claims under state law.

**JURISDICTION**

2.     This Court has jurisdiction over Plaintiff's Federal claim under Article VI, Clause 2 of the United States Constitution and RCW 2.08.010.  This Court has jurisdiction over Plaintiff's state claims under RCW 2.08.010.

3.     Venue in this Court is proper under RCW 4.12.010(2).

**PARTIES**

4.     Plaintiff Mary Pat Clemons, ARNP-CRNA, is an individual who resides at 14025 – 363rd Avenue SE, Sultan, WA 98294.

5.     Plaintiff Scott Kenyon Lange is an individual who resides at 14025 – 363rd Ave. SE, Sultan, WA 98294.

6.     Defendant State of Washington, Department of Health is an agency of the State of Washington and is domiciled in Olympia, WA.

7.     Defendant Washington Nursing Care Quality Assurance Commission ("WNCQAC") is a state commission created by legislative statute and is domiciled in Olympia, WA.

8.     Defendant Paula R. Meyer, MSN, RN, FRE, is Executive Director of the Washington Nursing Care Quality Assurance Commission.  At all times mentioned herein Ms. Meyer acted individually and purportedly in her official capacity.

9.     Defendant Laurie A. Soine, PhD., ARNP, is a member of the Washington Nursing Care Quality Assurance Commission.  At all times mentioned herein Ms. Soine acted individually and

Complaint                                                          2

1  purportedly in her official capacity.

2
3   10.   Defendant Augusta M. Bayne is Staff Counsel for the Washington Nursing Care
4   Quality Assurance Commission.   At all times mentioned herein Ms. Bayne acted individually
5   and purportedly in her official capacity.

6                                              **FACTS**

7   11.   On or about June 2018 Plaintiff Clemons sought employment in Washington State as a
8   licensed Certified Registered Nurse Anesthetist ("CRNA").   On June 10, 2018 CRH, a
9   corporation licensed to operate in Washington State, offered Ms. Clemons a CRNA position
10
11  based in Kirkland, WA at an annual salary of $220,000 plus benefits to commence October 1,
12  2018.   CRH's employment offer was contingent solely upon Plaintiff Clemons' obtaining a
13  Washington state CRNA-ARNP (Advanced Practice Nurse Practitioner or "ARNP") license.

14  12.   At the time of the CRH offer Plaintiff Clemons' official residence was in Aurora, Ohio.
15  She was employed as an ARNP-CRNA working in the obstetrics unit at Marion General Hospital
16  in Marion, Ohio at an annual salary of $192,000 plus benefits.

17
18  13.   Plaintiff Clemons' motivation for pursuing the CRH position was twofold – (1) to
19  enable a committed intimate relationship to proceed to marriage to Plaintiff Lange, who wished
20  to maintain his residence in Sultan, WA, and (2) to obtain employment in her profession that
21  would accommodate various physical disabilities that made continued employment at the Ohio
22  position untenable.

23  14.   Though Ms. Clemons had every right to quit the Ohio position and relocate to
24  Washington State she was forced by lack of a Washington license and economic necessity to
25
    continue in the Ohio position.   Ms. Clemons at the time was a single mother with a mortgage,
26

Complaint                                          3                    **MARY P. CLEMONS   SCOTT K. LANGE**
                                                                       P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 * 0   A V E .   S E
                                                                              SULTAN, WASHINGTON 98294
                                                                           (419) 560-2572   (425) 210-8531
                                                                         Email: scottk_lange@comcast.net

limited savings, and a daughter in college. In March 2019 Ms. Clemons was advised by her physician that her progressive disabilities presented a potential risk to her and to her patients, forcing her to take medical leave to pursue a series of surgeries to address eroded joints in both hands and knees.

15.   The CRH position was unique because it fully accommodated Plaintiff Clemons' progressive physical disabilities. As a result of back injuries sustained in a December 2016 automobile accident and the progressive deterioration of joints due to acute arthritis, Ms. Clemons' ability to continue her CRNA services in the Marion General Hospital obstetrics unit was severely compromised. The CRH position involved administration of anesthesia attendant to endoscopies and colonoscopies performed on low risk patients at a Kirkland clinic facility. The CRH position was within a reasonable commute of Plaintiff's Sultan residence eliminating the need for relocation.

16.   At the time of application for Washington license, Ms. Clemons had 31 continuous years of CRNA professional certification from the National Board for Certification and Recertification of Nurse Anesthetists ("NBCRNA") and state licensure in Ohio. Over her 31 years as a CRNA Ms. Clemons provided anesthesia service over a wide range of medical practice areas.

17.   Washington law (RCW 18.130.075) requires WNCQAC to issue a temporary practice permit to out-of-state applicants from states with "substantially equivalent licensing standards" provided the applicant is "not subject to a denial of license". The ARNP-CRNA licensing requirements for Ohio are substantially equivalent to those of Washington State. But for WNCQAC's wrongful denial of license Ms. Clemons was entitled by law to a temporary practice

Complaint

4

1

2

permit that would have allowed CRH to employ her in the position offered.

3

18.   After submitting her application Ms. Clemons and CRH began to become concerned

4

about how long it was taking WNCQAC to issue her license.  Ms. Clemons contacted WNCQAC

5

by phone on multiple occasions asking what was taking so long but received no explanation.

6

Finally, during one call initiated by Mr. T. Bolander, WNCQAC employee, Mr. Bolander

7

explained that WNCQAC was delaying responding to Ms. Clemons because [WNCQAC] "didn't

8

know what to do in response to your application".   In the same conversation he noted

9

"everybody in the office knew about your application" and that "everyone in the office was

10

talking about it".  He also stated that "everyone in the office knows about your multiple calls and

11

that WNCQAC members were not returning those calls".   Mr. Bolander advised that he

12

contacted Ms. Clemons because he felt it was proper to respond to her calls and improper to

13

continue to leave her in the dark.

14

15

19.   In the multiple calls Ms. Clemons made to WNCQAC she advised that she was anxious

16

to get a response on her license application because the license was the last requirement to secure

17

a position that she was offered at CRH.  She was explicit in advising WNCQAC that she would

18

lose the CRH job if her license was not timely issued.

19

20.   The official record in this contains a WNCQAC "Nursing NOD Worksheet" for Ms.

20

Clemons dated July 5, 2018 noting "NOD – Deny" and indicating that WNCQAC had confirmed

21

on or around August 22, 2018 that Ms. Clemons "did not earn a graduate degree".

22

23

21.   On September 17, 2018 Defendant WNCQAC, through its staff counsel Defendant

24

Bayne, issued a written Notice of Decision to Plaintiff Clemons denying her request for licensure

25

citing "Specifically, you have not provided evidence that you have a graduate degree from an

26

Complaint

5

MARY P. CLEMONS   SCOTT K. LANGE
P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 ᴿᴰ   A V E .   S E
SULTAN, WASHINGTON 98294
(419) 560-2572   (425) 210-8531
Email: scottk_lange@comcast.net

1
2
3
4
5

advanced nursing education program". The Notice of Decision did not inform Ms. Clemons why licensure was denied, citing only RCW 18.130.055 (1)(d) and WAC 246-840-342 (1)(b) as the sole basis for WNCQAC's denial. The statutory citations in the Notice of Decision confirm Ms. Bayne's actions to be under color of state law.

6
7
8
9
10

22.  WNCQAC's Notice of Denial, citing RCW 18.130.055 (1)(d), further asserted that its denial of license was based on a failure by Ms. Clemons to prove that she was qualified "pursuant to the requirements of RCW 18.130.055, the chapters identified in RCW 18.130.040(2), or the rules adopted by the disciplining authority".

11
12
13
14
15
16
17

23.  WNCQAC's denial of licensure to Plaintiff Clemons was not based on any disciplinary aspect nor at any time did WNCQAC assert that any act or failure to act by Ms. Clemons constituted the basis for or contributed to WNCQAC's decision to deny issuing Ms. Clemons a Washington CRNA-ARNP license. As WNCQAC's handling of Ms. Clemons' application did not involve WNCQAC's disciplinary function or authority, the actions of failures to act by Defendants cannot be construed to be judiciary or quasi-judiciary in nature.

18
19
20
21
22
23

24.  At or around September 14, 2018 CRH made independent inquiry to WNCQAC regarding the status of Ms. Clemons' license and was advised by WNCQAC that her license request had been denied. An email between Christian Schmalz of CRH and Paula Meyer of WNCQAC confirms that Defendant Meyer had direct knowledge that Ms. Clemons' employment offer from CRH would be rescinded unless the ARNP-CRNA license was issued by WNCQAC.

24
25
26

25.  On September 28, 2018 Mr. Schmalz wrote Ms. Clemons and in that communication rescinded its employment offer and advised Plaintiff Clemons that CRH needed to look for other

Complaint                                           6

1
2
3

candidates to fill the position.  CRH's rescission of offer was based solely on Ms. Clemons'

failure to obtain a Washington ARNP-CRNA license.

4
5
6
7
8
9
10
11

26.  Ms. Clemons was shocked by WNCQAC's denial of licensure.  She believed WNCQAC's conclusion that she had not established her qualifications must have been due to a technical error in her licensing application.  After reviewing her application Ms. Clemons realized some of her educational transcript – several courses taken at Ursuline College in Pepper Pike, OH – had been inadvertently omitted from her application.  Ms. Clemons' presumption was that WNCQAC had detected insufficient education in a particular discipline so she acted quickly to obtain the Ursuline College transcripts omitted in error from her application.

12
13
14
15
16

27.  Defendant Bayne declined to provide Ms. Clemons specific details as to how Ms. Clemons had failed to establish her qualifications for licensure.  However, the Notice of Decision noted "If you disagree with the decision, and want a hearing, you must indicate that on the enclosed form, sign it, and return it to us at the address listed on the form.  You will then be notified of the date of your hearing."

17
18
19
20
21
22

28.  The "Request for Hearing" form included the following:  "I disagree with the Notice of Decision regarding my application for a credential and I request a hearing.  I understand that I will then be notified of the date of my hearing and will also have an opportunity to negotiate a settlement before the hearing date."  Plaintiff Clemons submitted the form and requested a settlement conference in advance of a formal hearing.

23
24
25
26

29.  Ms. Bayne set the Settlement Conference for October 12, 2018 at the Washington Convention Center.  Ms. Clemons flew out from her home in Ohio and Plaintiff's Clemons and Lange and Defendants Bayne and Soine attended.

Complaint

7

1
2
3
4
5

30.   As the Settlement Conference got underway Plaintiff Lange attempted to express legal concerns about WNCQAC's position.  He was abruptly cut off by Ms. Bayne who stated loudly "I KNOW THE LAW".  Ms. Bayne then advised Mr. Lange that he was not an attorney and therefore not allowed to speak or otherwise participate in OR BE HEARD during the conference.

6
7
8
9
10
11
12
13

31.   During the conference, believing it would validate her credentials, Ms. Clemons provided copies of the omitted transcripts from Ursuline College and a copy of the Council on Accreditation ("COA") of Nurse Anesthesia Educational Programs "List of Recognized Educational Programs" for June, 1987.  The COA document confirmed that the graduate anesthesia program Ms. Clemons attended at the Mount Sinai Medical Center School of Anesthesia was a recognized advanced nurse training program accredited by a national nursing accreditation body recognized by the United States Department of Education.

14
15
16
17
18

32.   At the meeting Ms. Clemons also presented her "certificate of completion" of the accredited Mount Sinai Medical Center School of Anesthesia education program.  In light of the COA certification of the Mount Sinai program, the "certificate of completion" in fact constituted a "graduate degree".

19
20
21
22

33.   As Mount Sinai Medical Center School of Anesthesia ceased operation in or around 1990 a copy of Ms. Clemons' full transcript was not directly available from that institution as required by WNCQAC's application process.  However, a copy of her educational transcript was made available to WNCQAC, believed by either NBCRNA or the Ohio Nursing Commission.  .

23
24
25
26

34.   The graduate nursing anesthesia program completed by Ms. Clemons was accredited by the exact same body that accredited graduate nursing anesthesia programs offered by academic institutions during the same period of time.  The same body that accredited the Mount Sinai

Complaint

8

MARY P. CLEMONS   SCOTT K. LANGE
P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 ᴿᴰ   A V E .   S E
SULTAN, WASHINGTON 98294
(419) 560-2572   (425) 210-8531
Email: scottk_lange@comcast.net

Medical Center School of Anesthesia also accredited the Sacred Heart Medical Center School of Anesthesia in Spokane, WA prior to its affiliation with Gonzaga University starting in or around 1980.

35. During the course of the settlement conference WNCQAC's position was finally made clear. WNCQAC was asserting that an academic Master's or Doctoral degree was a bona fide occupational qualification to hold a CRNA-ARNP license in Washington State. Because Ms. Clemons held only a "certificate of completion" and not an "academic Master's or Doctoral degree", and notwithstanding completion of an equal anesthesia education and 31 years of National certification, Ohio licensure and continuous practice, in the determination of WNCQAC she had not established her qualifications to hold a Washington CRNA-ARNP license.

36. WNCQAC expressed clearly at the conference that it interpreted the "graduate degree" standard contained in WAC 246-840-342 to mean "academic Master's or Doctoral degree". Defendant Soine represented WNCQAC at the settlement conference and was represented as a WNCQAC member who could authorize issuance of a license to Ms. Clemons. At one point during the conference, after being advised by Ms. Clemons that Ms. Clemons did not possess an academic advanced nursing Master's or Doctoral degree, Ms. Soine asked if Ms. Clemons held *any* Master's degree. Defendant Soine's question left Plaintiff Clemons the distinct impression that Ms. Soine and WNCQAC would have accepted *any* academic Master's or Doctoral degree in satisfaction of the WAC 246-840-342 requirement, regardless of the area of major.

37. In subsequent conversations with other Washington licensed ARNP-CRNAs, Ms. Clemons confirmed that licenses had been granted by WNCQAC to applicants holding an academic Masters or Doctoral degree in subjects other than "advanced nursing" as required by

Complaint                                                    9

1

WAC 246-840-342 and WAC 246-840-340.

2

3

38.   As Ms. Clemons did not hold any academic Master's or Doctoral degree she was

4

advised by WNCQAC that she was simply not eligible for licensure in Washington State.

5

39.   Washington law requires applicants to practice as an advanced registered nurse

6

practitioner to pass an examination in subjects determined by WNCQAC.  WNCQAC does not

7

administer its own examination for CRNA-ARNPs, it relies exclusively on the National Board

8

for Certification and Recertification of Nurse Anesthetists (NBCRNA) to determine content and

9

administer the examination.  CRNAs having passed the examination must complete annual

10

continuing education requirements and pay periodic recertification fees to maintain certification

11

but are not required to re-take the examination after passing it the first time.

12

13

40.   WNCQAC's asserted policy, as later explained and confirmed by Ms. Bayne, required

14

CRNA applicants applying via interstate endorsement to meet the same licensing requirement as

15

new graduates entering the profession.   This means explicitly that interstate endorsement

16

candidates must either have the asserted academic Master's or Doctorate degree, or they must re-

17

take the NBCRNA certification exam to establish credentials.  Ms. Bayne was well aware that

18

the NBCRNA now requires a prerequisite of at least an academic Master's degree (and very

19

soon, an academic Doctoral degree) to sit for the exam.   Under Defendant Baynes' asserted

20

"graduate degree" standard, soon out-of-state CRNAs holding only an academic Master's degree

21

seeking licensure in Washington would also be ineligible for CRNA licensure without first

22

obtaining a Doctoral degree and retaking the CRNA certification exam.

23

24

41.   In asserting WNCQAC's academic Master's or Doctoral degree standard, Defendant

25

Bayne was well aware Ms. Clemons could not qualify for licensure without repeating her

26

Complaint                                           10

MARY P. CLEMONS  SCOTT K. LANGE
P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 ʳ ᵈ   A V E .   S E
SULTAN, WASHINGTON 98294
(419) 560-2572  (425) 210-8531
Email: scottk_lange@comcast.net

graduate education, notwithstanding the fact, well known to Ms. Bayne, that Ms. Clemons had taken and passed the exam previously and that the certification remained current and valid.

42.    Such policy would bar an even larger population of out-of-state ARNP-CRNAs from Washington licensure by interstate endorsement and constitutes a clear violation of the privileges and immunities provision of the US Constitution.  As a licensed Washington attorney acting as WNCQAC counsel for licensing by interstate endorsement, it is inconceivable that Ms. Bayne would be unaware of US Constitutional requirements.

43.    It is important to note that WNCQAC's asserted educational policy was not only discriminatory because it required a "graduate degree", but also because it relied on eligibility requirements for taking the equivalency exam to exclude out-of-state applicants.

44.    At the time Ms. Clemons submitted her application, 48 states "grandfathered" CRNAs holding "certificates of completion" and deemed such CRNAs as fully qualified to hold professional CRNA-ARNP license.  Further, the National Council of State Boards of Nursing ("NCSBN") through its "Consensus Model" policy guidance recommends "grandfathering" of "certificate trained" CRNAs as long as they qualified for licensure at the time of certification and have maintained certification and practiced continuously since.

45.    Several weeks after the settlement conference concluded Plaintiff Clemons was finally advised in writing by Defendant Bayne that Defendant Soine and WNCQAC upheld the denial of licensure.  Defendant Soine had the benefit of counsel by Ms. Bayne in deciding to uphold the Notice of Decision denying licensure to Ms. Clemons.  In response, Ms. Clemons requested a hearing by following the instructions indicated on the forms that accompanied the Notice of Decision.

Complaint

11

46. In reply to Ms. Clemons' request for a hearing WNCQAC unilaterally initiated an adjudicative proceeding process inconsistent with Washington law. Specifically, WNCQAC attempted to initiate an appeal under the rules under WAC 246-10 rather than under the rules contained in WAC 246-11 required by law. Ms. Clemons objected in a November 16, 2018 letter to John Kunz and the Adjudicative Service Unit., raising objections to the appeal process initiated by WNCQAC and also noting several statutory defects in WNCQAC's Notice of Decision. Additional concerns were iterated and objections asserted by Ms. Clemons in a subsequent letter Dated January 24, 2019 to Marlee B. O'Neil, the identified Presiding Officer for a Brief Adjudicative Proceeding.

47. Virtually all, if not all, "certificate trained" CRNAs are over the age of 40. In discussions between Ms. Clemons and Mr. Jeff Follis, President of the Washington Association of Nurse Anesthetists, Ms. Clemons learned of conversations and exchanges between Mr. Follis and Defendant Meyer wherein the impact of WNCQAC's proposed academic degree program was discussed and debated. In those discussions Ms. Meyer was clearly advised that the careers of all "certificate trained" CRNAs seeking to live and practice in Washington would be ended if the policy was adopted. Mr. Follis noted that all of the affected individuals were in the twilight of their careers and argued that those professionals should be allowed to leave the profession through natural attrition. The following text dialogue between Mr. Follis and Defendant Meyer from around the time of the 2016 revision to WAC 246-840-342 leaves no doubt Defendant Meyer was aware that not only Ms. Clemons, but an entire class of qualified professionals, all over age 40, would face exclusion from the Washington CRNA profession under her proposed policy.

MARY P. CLEMONS   SCOTT K. LANGE
P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 ª ᵈ   A V E .   S E
SULTAN, WASHINGTON 98294
(419) 560-2572   (425) 210-8531
Email: scottk_lange@comcast.net

1
2
3
4
5

"How would the citizens of Washington be affected if every ARNP born prior to 1953 put out to pasture?   There are fewer and fewer non-graduate degree practitioners every year. Attrition will make the grandfather clause time limiting, but refusing licensure to qualified providers is akin to forced retirement."

6
7
8
9

48.   The above exchange provided by Mr. Follis was specific to Plaintiff Clemons' case and reasonably indicates Defendant Meyer was party to communications pertinent to this case that are subject to disclosure as public records pursuant to RCW 42.56, either directly or under the *Nissen* case standard.

10
11
12
13
14
15
16
17
18

49.   Exchanges provided by Mr. Follis indicate that the revised policy was consciously structured to allow practicing CRNAs who were already licensed and practicing in Washington and who had either graduated from Sacred Heart Medical Center School of Anesthesia, or another "certificate" program, would be allowed continued licensure in Washington notwithstanding WNCQAC's asserted position that an academic advanced nursing Master's or Doctoral degree was now a bona fide occupational qualification.   This "special privilege" is effectuated via WAC 246-840-360.

19
20
21
22

50.   An internal communication dated October 6, 2016 between Mindy Schaffner, WNCQAC Associate Director, Nursing Education, Licensing and Research and DOH Secretary John Wiesman, provides the only documented insight regarding WNCQAC's decision to exclude "certificate trained" CRNAs from licensure:

23
24
25
26

"In reference to grand-fathering nurse practitioners, the commission did grandfather nurses that did not meet the educational requirements for ARNP licensure.   In 2016, the commission decided to not grandfather nurse practitioners for several reasons.   Nurses applying for initial

Complaint                                    13

licensure had their graduate degrees. There were and continue to be a few remaining grandfathered nurse practitioners in our state. However, the numbers are continuing to diminish due to attrition and retirements. As our educational institutions continue to produce more graduate degrees, there is less need for grandfathering."

In reply Mr. Wiesman stated:

"What this doesn't answer is why we didn't grandfather nurses like Ms. Thorsen-Cohen in. Is there an answer to that question that can be added to this response? And do we make clear the educational requirements in application materials that are easily accessible?"

51. The case of Ms. Thorsen-Cohen and the correspondence in the preceding paragraph, obtained through public records requests, confirms that prior to Ms. Clemons' case WNCQAC had in fact denied licensure to out-of-state license applicants on prior occasions. Exchanges between Ms. Clemons and WANA officials also disclosed that other out-of-state CRNA applicants "had been affected" by Defendant's new educational policy.

52. In fact, as noted in recent newspaper articles, there is a critical shortage of nurses and advanced practice nurses in Washington, a situation that has grown significantly worse with the Covid-19 crisis. CRNAs are considered pulmonary airway experts and are well trained in the operation of ventilation equipment required to keep acute Covid-19 patients alive. In other words, at the time Defendants were declining Plaintiff Clemons' application for CRNA-ARNP license, the State of Washington was facing an acute shortage of nurse and advanced practice nurse professionals.

53. Aware of the exchanges between Mr. Follis and Defendant Meyer, on November 16, 2018 Ms. Clemons filed a formal complaint with the Washington State Human Rights

Complaint                           14

MARY P. CLEMONS  SCOTT K. LANGE
P.O. BOX 189  14025 363RD AVE. SE
SULTAN, WASHINGTON 98294
(419) 560-2572  (425) 210-8531
Email: scottk_lange@comcast.net

Commission seeking investigation of WNCQAC for prohibited employment practices constituting age discrimination.   The Human Rights Commission ignored Ms. Clemons' complaint without so much as a written reply.  (Ms. Clemons wrote follow up letters to the Human Rights Commission on January 6, 2019 and again on March 26, 2019, updating the known facts and again requesting investigation.  The Commission never responded.)

54.   WNCQAC responded to the November 16, 2018 objections raised by issuing an AMENDED NOTICE OF DECISION, properly signed by Defendants Meyer and Bayne, dated December 7, 2018.  The signature of Defendant Meyer again confirmed Ms. Meyer's direct involvement in this matter.

55.   With the amended notice came also a modified "Request for Hearing" form that included a purported option to request either a Brief Adjudicative Hearing pursuant to WAC 240-11-420 or a full adjudicative hearing pursuant to RCW 18.130.055(4) and WAC 246-11-470, et seq.  However, as the only issue in controversy was the adequacy of Ms. Clemons' education, WAC 240-11-420 stipulates a Brief Adjudicative Hearing is required.  The amended notice restarted the appeal period and Ms. Clemons filed a timely appeal.

56.   Plaintiff's preferred the Brief Adjudicative Hearing process because it is mandatory by law; the issues in the case were very narrow; the process is less formal than a full adjudicative proceeding; and without need for counsel and associated delays and expense.  However, the Brief Adjudicative Process is largely within WNCQAC's definition and control with multiple procedural advantages available to WNCQAC.

57.   Because the central element in WNCQAC's denial of licensure was the ordinary meaning of "graduate degree" under WAC 246-840-342 and WAC 246-840-340, and because

Complaint                                    15

WNCQAC was absolutely refusing to explain its position, Plaintiff Lange on or around September 19, 2018 initiated the first in a series of requests for public records from the Washington Department of Health pursuant to RCW 42.56.

58.   The WNCQAC's official administrative record of Ms. Clemons' appeal, Master Case No. M2016-770 speaks for itself as to the multiple issues of due process that arose in the course of the administrative appeal in this case and is hereby incorporated by reference.

59.   Key facts from the official administrative appeal record include the following:

a.   Defendant Bayne asserted there is no provision for determination of equivalence of education despite WNCQAC's total reliance on NBCRNA examination (RCW 18.79.170) to determine educational adequacy.   Therefore, the NBCRNA exam IS the determinant of equivalence;

b.   At no time do Defendants provide any specifics as to any areas where Plaintiff Clemons' education or professional skills are deficient, how any perceived inadequacies can be resolved, or provide any explanation why an academic degree is superior to a graduate degree obtained in an alternative educational setting as in the case of Ms. Clemons;

c.   In her briefs, Defendant Bayne acknowledges that a professional license is a "constitutionally protected property right";

d.   In adjudicative decisions the adjudicating officer acknowledged that the term "graduate degree", under both Webster's and Black's Legal Dictionary, would include the certificate of completion earned by Ms. Clemons from Mount Sinai Medical Center School of Anesthesia.   In other words, both officials presiding over the Brief Adjudicative Process noted

Complaint                                      16

the "certificate of completion" earned by Ms. Clemons was a "graduate degree" under ordinary language;

e.      In its briefs, WNCQAC changed its position on whether the term "graduate degree" was ambiguous from "not ambiguous" to "ambiguous", creating a moving target Plaintiff was unable to effectively rebut. WNCQAC's first assertion that the term "graduate degree" under WAC 246-840-342 was ambiguous came in the final administrative response to Plaintiff's request for reconsideration, depriving Plaintiffs any opportunity to brief or respond to Defendant's revised legal position;

f.      Defendants repeatedly assert changes to the educational requirements were made during the 2016 rule making process for WAC 246-840-342. Examination of the legislative history file does not support WNCQAC's assertions. In fact, the rule-making file is devoid of any specific mention that "certificate trained" ARNP-CRNA applicants would be denied licensure;

g.      Despite numerous requests to WNCQAC by Ms. Clemons for a mechanism to restore her CRNA qualifications, WNCQAC offered no path to CRNA licensure in Washington State, leading to the conclusion by Ms. Clemons that she would need to repeat her education - obtaining a PhD. and then re-taking the certification exam – to resume her CRNA career in Washington. WNCQAC and the individual Defendants Bayne, Soine and Meyer were each well aware of this fact and were also aware that all administrative appeals filed by Ms. Clemons would be futile and end in failure as a consequence; and

h.      At no point during the entire administrative proceedings did any of the Defendants advise Plaintiff Clemons of any alternative means through which Ms. Clemons might obtain her

Complaint                                    17

MARY P. CLEMONS   SCOTT K. LANGE
P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 ʀ ᴅ   A V E .   S E
SULTAN, WASHINGTON 98294
(419) 560-2572   (425) 210-8531
Email: scottk_lange@comcast.net

Washington State CRNA-ARNP license, including specifically, any process through which Plaintiff's license could be approved via WNCQAC's Nursing Program Approval Panel.

60.    Through its effective control of the administrative appeal process under the informal Brief Adjudicative Proceeding rules, Defendants also excluded critical documents from the official record.  Two significant documents excluded from the record include:

a.    A letter dated February 28, 2019, Anna Polyak, RN, JD, American Association of Nurse Anesthetists ("AANA") Senior Director, State Government Affairs and Legal, to Marlee B. O'Neil, Department of Health Presiding Officer for the Brief Adjudicative Proceeding, in which Ms. Polyak emphatically asserts on behalf of Ms. Clemons that she is fully qualified to practice as a CRNA-ARNP notwithstanding lack of an academic Master's or Doctoral degree. AANA is the parent organization to NBCRNA.  As NBCRNA's position is that Ms. Clemons did not have to re-take the certification exam to establish her credentials, it would not re-administer the exam regardless of the status of her "graduate degree".  Consequently, NBCRNA's position in combination with WNCQAC's asserted educational policy meant Ms. Clemons could never achieve ARNP-CRNA licensure in Washington State even after repeating her graduate anesthesia education.

b.    A letter dated April 9, 2019 Paula Meyer to Mary Clemons, responding on behalf of the Office of Governor to Ms. Clemons earlier request to the Governor to intervene in the matter and direct WNCQAC to reconsider its position regarding CRNA educational requirements.  This communication contained significant factual inaccuracies, including, among others, a claim that the "initial decision was based on properly promulgated rules".  In the same letter Defendant Meyer wrote "You have been offered due process in this matter, and we would ask that you

Complaint                                                    18                    MARY P. CLEMONS   SCOTT K. LANGE
                                                                                      P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 R D   A V E .   S E
                                                                                                       SULTAN, WASHINGTON 98294
                                                                                                        (419) 560-2572   (425) 210-8531
                                                                                                      Email: scottk_lange@comcast.net

1
2
3
4

await the outcome of this process." Finally, the letter further states "And as the matter remains under appeal, any other action at this stage would be premature." The contents of this letter clearly demonstrate Defendant Meyer's lack of good faith in this matter.

5
6
7
8
9
10
11
12
13
14
15

61.   WNCQAC's unlawful interpretation of the meaning of "graduate degree" within the text of WAC 246-840-342, and Defendant's persistent claims that the revised standard was based on properly promulgated rules, motivated Plaintiff Lange to make multiple requests pursuant to RCW 42.56 for the rule making files from the Department of Health pertinent to the 2016 revisions to WAC 246-840-342. These requests included specifically a request to examine the legislative rule making file to be maintained for public inspection pursuant to RCW 34.05.370(1). After providing some responsive records, on February 22, 2019 DOH advised that no additional public records responsive to Mr. Lange's request were in existence, closing out the request. (Unknown to Mr. Lange, approximately 1,000 pages of responsive public records did exist and were being silently withheld by DOH.)

16
17
18
19
20
21
22

62.   The lack of access to the legislative history for the 2016 revisions to WAC 246-840-342, in tandem with WNCQAC's refusal to provide any explanation or clarification for its highly suspect position, severely compromised Plaintiff's ability to argue its case in the Brief Adjudicative Proceeding.   Specifically, Lange sought to confirm "a substantial basis" for WNCQAC's asserted policy of excluding certified out-of-state ARNP-CRNAs from Washington licensure.

23
24
25

63.   Upon exhaustion of its administrative appeals, with the WNCQAC Amended Notice of Decision affirmed, Plaintiffs engaged counsel and timely filed on June 5, 2019 for judicial

26

Complaint

19

MARY P. CLEMONS   SCOTT K. LANGE
P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 ᴿᴰ   A V E .   S E
SULTAN, WASHINGTON 98294
(419) 560-2572   (425) 210-8531
Email: scottk_lange@comcast.net

1
2 review in Thurston County Superior Court Case Number 19-2-02841-34. The record in that
3 action is hereby incorporated by reference.

4    64.   The Superior Court proceedings were contentious. Plaintiff's reasonable and well
5 supported motions were denied by the Court, limiting Plaintiff access to documents and creating
6 barriers to getting the full record into evidence. Plaintiff Counsel noted to counsel for
7 Defendants that since Plaintiffs were challenging the validity of the rule WNCQAC was
8 obligated by law to make the legislative file available to Plaintiffs and admit same into the case
9 record.   WNCQAC Counsel filed and prevailed in a motion in opposition.   Plaintiff
10
11 Counsel also noted to WNCQAC counsel around the same time that Plaintiffs had long ago
12 requested those same files from DOH pursuant to RCW 42.56.

13    65.   Court dates were delayed for months dragging out the proceedings forcing Plaintiffs to
14 incur significant legal fees. The Superior Court proceedings were as adverse to Plaintiffs as the
15 administrative appeal process.

16    66.   On September 8, 2019 Plaintiff Lange was advised by counsel Boyer that AG counsel
17
18 representing Defendant WNCQAC had asserted that Mr. Lange had withdrawn his February 12,
19 2019 public records request for the legislative history of the 2016 revisions to WAC 246-840-
20 342. Lange immediately contacted DOH, objecting to DOH's claim the request had been
21 withdrawn, producing written correspondence confirming DOH had advised "no additional
22 records" before closing out the request. Upon presentation of the written correspondence DOH
23 immediately conceded its mistake and worked to produce the requested records, disclosing 284
24 pages on September 9, 2019 and another 764 pages of records on or around October 29, 2019. A
25
26

Complaint                               20

large volume of silently withheld records now produced, Plaintiffs only then had first visibility of public records enabling the first full evaluation of WNCQAC's claims and legal arguments.

67.     The records obtained by Mr. Lange provide important additional insights into the administrative process used by WNCQAC when a license application is denied. The following observations support the conclusion that WNCQAC has confused the process for appeal of license denials with its parallel disciplinary function, in the process confusing and misinforming those seeking to appeal.

a.      Public records contained the partial record of other WNCQAC license applicants whose licenses had been denied. Most of the denials appeared to be on valid grounds. However, in one other CRNA case, the applicant appeared to be qualified but appealed to their legislative representative for relief rather than filing an administrative appeal, resulting in a loss of privilege and rights.

b.      WNCQAC's process, beginning with the initial Notice of Decision, followed by a "Settlement Conference", subjects the applicant to two rejections of licensure before appeal rights are even activated. Applicants denied licensure are required to "request a hearing" with written reasons for disagreement with the decision as a condition of requesting a hearing. Those comments become part of the record and may be used against the applicant in any subsequent proceedings. The "Request For Hearing" form does not indicate or suggest that the "Hearing" is in fact the process for administrative appeals governed by RCW34.05, only that the applicant is "request(ing) a hearing" to explain why they disagree with WNCQAC's decision.

c.      In describing "What Happens at Hearing", WNCQAC notes "As the applicant, you have the burden to establish, by a preponderance of evidence, that you are qualified *in*

Complaint                                    21

1
2
3
4

*accordance with the Uniform Disciplinary Act, RCW 18.130; your profession's practice act which is identified in RCW 18.130.040(2),* and any rules adopted by the *disciplining* authority." (Emphasis added).

5
6
7
8
9
10
11

     d.    The administrative record in Ms. Clemons case clearly reflects significant confusion by WNCQAC as to the legally prescribed process for conducting the Brief Adjudicative Proceeding in cases where educational deficiency is asserted as the sole issue. A reasonable person reviewing the administrative file in Ms. Clemons' case would conclude that WNCQAC lacks experience in how to conduct a proper appeal when denial is predicated on other than disciplinary factors.

12
13
14
15
16
17
18
19

     e.    In general, where administrative decisions deprive applicants of requested approvals, the law requires the deciding agency to notify the aggrieved party of the availability of appeal and the process for pursuing that appeal. In this case, but for Mr. Lange's familiarity with administrative process in land use and FEMA matters, Ms. Clemons, like the other applicant who lost her appeal rights by not asserting a timely administrative appeal, would never have understood that the word "Hearing" referred to the body of procedures prescribed by RCW 34.05 and WAC 246-11.

20
21
22
23
24
25
26

     f.    Plaintiffs believe that Defendants have either intentionally designed the Notice of Decision documents to obfuscate the applicant's opportunity to understand, pursue and exhaust administrative remedies when a license application is denied for other than disciplinary reasons, or alternatively, Defendants have negligently used essentially the same forms and process used for disciplinary matters in adjudicating non-disciplinary matters. This poor process design, combined with the generally adversarial demeanor of WNCQAC individuals who focus

Complaint

22

1
2
3

primarily on disciplinary cases, further compounded the extremely rude treatment of Ms. Clemons by the Defendants in this case.

4
5
6
7
8

  g. In the instant case, after returning the first "Request for Hearing" form, Ms. Clemons was almost immediately injected into a full administrative appeal process without having any explanation of the basis for denial of her application for license, and without any explanation that the "Request for Hearing" was in fact the initiation by Defendants of a formal administrative appeal process.

9
10
11

  h. As noted previously, all Defendants were aware that Ms. Clemons had no possibility of winning her appeal under the interpretation of rules they were asserting.

12
13
14
15

  68. On or about October 11, 2019 Mr. Lange contacted DOH requesting pursuant to RCW 42.56 public records additional case related records – "…..including records contained on personal media format per the Nissen standard (see *Nissen v. Pierce County*, 357 P. 3d 45 – Wash: Supreme Court 2015)."

16
17
18
19
20
21
22
23
24
25

  69. In the reply dated October 29, 2019 Julie Carrick, DOH, advised "However, these documents (referring to the 752 pages attached to her reply) along with others I will forward you by the end of the week are everything the Nursing Commission has regarding the subject matter." However, none of the documents received from DOH included any of the exchanges between Defendant Meyer and members of the Washington Association of Nurse Anesthetists, including specifically the other side of the exchanges with Jeff Follis noted previously in this document. Plaintiff Lange believes Defendants are still silently withholding public records that should have been disclosed and/or produced in response to Lange's multiple public records requests.

26

Complaint      23

70.   With rising frustration and legal costs, Plaintiff Lange sought review of Defendants actions by lodging complaints about Defendants actions with "watchdog organizations" responsible for assuring Washington State government accountability.   In October 2019 Mr. Lange filed written complaints with the WNCQAC asserting complaints against Defendants Meyer and Soine for professional and official misconduct as defined by RCW statute.   In November 2019 Mr. Lange filed a written complaint with the Washington Executive Branch Ethics Board regarding public misconduct and abuse of office by Defendants.   Mr. Lange also contacted the Washington AGs Office to file a similar written complaint alleging official misconduct and abuse of office against Defendant Meyer.   Each organization dismissed Mr. Lange's complaints and declined to investigate or act.

71.   Plaintiff Lange also contacted the Office of the Attorney General and asked that criminal abuse of office charges be filed against Defendants Meyer and Soine for violations of RCW 9A.80.010 (Official Misconduct) and RCW 42.20.100 (misdemeanor to neglect to perform enjoined duty). RCW 9A.08.010 states "(1) A public servant is guilty of official misconduct if, with intent to obtain a benefit *or deprive another person a lawful right or privilege: (a) He or she commits an unauthorized act under color of law; or (b) He or she intentionally refrains from performing a duty imposed upon him or her by law."* (Emphasis added).   Mr. Lange's request was based on the belief, after finally obtaining and reviewing the legislative rule-making file, that Defendants were arbitrarily, capriciously, knowingly and intentionally depriving Plaintiff Clemons of property rights and constitutionally protected privileges without just cause for doing so.

Complaint                                    24

72. On December 12, 2019 Mr. Lange wrote Attorney General Ferguson regarding "Matter of Mary P. Clemons, CRNA". With previously missing facts Mr. Lange was able to more fully articulate Defendants legal violations. Mr. Lange requested Mr. Ferguson to prioritize the matter and end the ongoing pointless process.

73. On or around January 16, 2020 Plaintiffs were advised by counsel that, without explanation, WNCQAC had issued Plaintiff Clemons' Washington CRNA-ARNP license and was requesting a joint motion seeking dismissal of the petition for judicial review due to mootness. Via letter from Sarah Wright, Assistant Attorney General to Randy Boyer, counsel for Plaintiffs dated January 16, 2020 Ms. Wright stated: "The Nursing Program Approval Panel convened and decided to grant Ms. Clemons a license to practice as an ARNP-CRNA." Ms. Wright provided no explanation regarding the process or rationale for the decision by the Nursing Program Approval Panel ("NPAP") to suddenly abandon WNCQAC's legal position and defense of the judicial review and issue Plaintiff Clemons license. Despite accessing and searching WNCQAC online public records including the meeting minutes of the NPAP, Plaintiffs have been unable to find any record of how or why WNCQAC through NPAP abandoned its policy and legal position regarding the CRNA-ARNP academic Master's/Doctoral degree educational requirement.

74. Plaintiffs advised counsel to reject opposing counsel's request because Plaintiff's complaint also sought invalidation of WNCQAC's "academic Master's or Doctoral degrees only" policy. Counsel for WNCQAC responded expeditiously that the policy previously asserted had been rescinded and that qualifying "certificate trained" out-of-state CRNAs would be eligible for Washington licensure in the future.

Complaint                                25

75.   The only remaining element in Plaintiff's complaint was reimbursement of fees pursuant to Washington statute (RCW 4.84.350). The statute provides for reimbursement of up to $25,000 of matter related legal fees when agency decisions are reversed. WNCQAC declined reimbursement, noting the reversal had not been ordered by the Court as prescribed by the statute. Plaintiff noted Court determination was impossible in the face of voluntary surrender and mootness. Defendants through AG counsel then offered $12,000 contingent on a full waiver of all claims by Plaintiffs. Plaintiffs declined and directed counsel to conclude the action through joint motion for dismissal.

76.   On October 23, 2020 Plaintiffs filed a tort claim with the Washington State Office of Risk Management. As required by law the Washington State Tort Claim Form was submitted by Plaintiffs, completed and signed with all attachments as required, fully articulating the basis for claims and the relief sought by Plaintiffs. The Washington State Tort Claim Form submitted, with all attachments, is incorporated by reference.

77.   Later in 2020 Plaintiffs were advised, without explanatory comment, that The Office of Risk Management had transferred Plaintiff's claim to Gregory Silvey, Washington Assistant Attorney General, for follow up and resolution. Mr. Lange wrote Mr. Silvey on December 17, 2020 requesting dialogue regarding Plaintiff's claims. Mr. Silvey did not respond. Mr. Lange followed up with an email dated January 28, 2021 requesting that Mr. Silvey respond to the letter written December 17, 2020.

78.   Shortly after the January 28, 2021 email Mr. Silvey contacted Mr. Lange and advised that his office was still investigating the claim. Without any communication from Mr. Silvey since January, 2021, Plaintiff Lange contacted Mr. Silvey by email, noting the statute of

Complaint                                    26                    **MARY P. CLEMONS   SCOTT K. LANGE**
                                                                   P . O .   B O X   1 8 9   1 4 0 2 5   3 6 3 ᴿᴰ   A V E .   S E
                                                                   SULTAN, WASHINGTON 98294
                                                                   (419) 560-2572   (425) 210-8531
                                                                   Email: scottk_lange@comcast.net

limitations for filing a formal complaint and requesting that Mr. Silvey advise Mr. Lange regarding the State's position regarding Plaintiff's claims.

79.    When Mr. Silvey did not reply, Mr. Lange sent a follow up email noting that Mr. Silvey was in violation of his duty of diligence (See comment 1, RPC 1.3), for not providing any response to Plaintiff's claims.  Mr. Silvey responded to that email via reply email, noting that following his investigation he determined that the case "was not a candidate for early resolution" and did nothing further as a result.  As Plaintiffs had been advised that Mr. Silvey was responsible for the management and handling of Plaintiff's claims, Mr. Silvey's failure to advise Plaintiffs in any way of the status or disposition of those claims constitutes an unreasonable delay of justice in this matter by counsel for Defendants.

## FIRST CLAIM

*Violation of Article 4, Section 2 of the United States Constitution Pursuant to 42 USC 1983 Against Defendants Meyer, Soine and Bayne, each acting in individual capacity.*

80.    Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

81.    Defendants Bayne, Soine and Meyer at all times relevant to this action were acting under color of state law.

82.    Defendants Bayne, Soine and Meyer violated Plaintiff Clemons' liberty and property rights by unreasonably denying professional privileges – a CRNA-ARNP license Ms. Clemons had properly applied for and was entitled by Washington law to hold - on the basis of state-of-origin, in violation of Article 4, Section 2 of the United States Constitution and long standing common law unalienable rights providing free movement of US citizens throughout the United States.  Plaintiffs acted jointly to discriminate against a qualified out-of-state applicant for

Complaint                                27

1
2
3

CRNA-ARNP licensure by asserting policies they knew or should have known were inconsistent with multiple United States Constitutional requirements.

4
5
6
7
8

83.   Defendant's assertion of WAC 246-840-342(1) to deny licensure to Mary P. Clemons, on the sole basis of failure to establish educational qualifications, was without substantive basis and clearly discriminatory given WNCQAC's recognition and licensing of other CRNAs-ARNPs in Washington State holding essentially the exact educational credentials held by Ms. Clemons but unlike Ms. Clemons deemed qualified.

9
10
11
12
13
14

84.   Defendants either legally trained or well supported by multiple lawyers within the Office of Attorney General, knew or should have known their actions violated Plaintiff Clemons' constitutionally protected right to equal treatment in professional licensing and to hold a CRNA-ARNP license in Washington State.  Acts violating constitutionally protected rights cannot be construed as official acts and instead constitute official misconduct.

15
16
17
18
19

85.   Defendant's sudden surrender of the case they controlled, and subsequent issuance of a CRNA-ARNP license to Plaintiff Clemons, followed by full rescission of the policy asserted to deny licensure to Ms. Clemons, constitutes admission of the unconstitutional conduct of Defendants.

20

### SECOND CLAIM

21
22

*Violation of Amendments 5 and 14 of the United States Constitution Pursuant to 42 USC 1983 Against Defendants Meyer, Soine and Bayne, each acting in individual capacity.*

23

86.   Plaintiff hereby incorporates the preceding paragraphs as if fully written herein.

24
25

87.   Defendants Bayne, Soine and Meyer at all times relevant to this action were acting under color of state law.

26

Complaint                                                        28

88.  Defendants Bayne, Soine and Meyer acted in concert to deprive Plaintiff Clemons of Constitutionally protected property rights pursuant to Amendments 5 and 14 of the United States Constitution by denying Plaintiff Clemons due process in the licensing and legal appeal proceedings imposed upon Ms. Clemons in connection with an unjust and unconstitutional denial of Ms. Clemons' right to a license to continue employment in her field of qualification.

89.  Defendants Bayne, Soine and Meyer acted in concert with other non-individual Defendants to withhold, contrary to and in violation of applicable law, records and documents necessary for Plaintiffs to assess and determine the validity of Defendants claims and actions in this matter.

90.  Defendants knew, or should have known, that the policies asserted under WAC 246-840-342 against Ms. Clemons were in violation of constitutionally protected property and equal protection due process rights guaranteed under Amendments 5 and 14 to the United States Constitution, as well as other constitutional provisions including Article 1, Section 12 of the Washington Constitution prohibiting laws that grant special privilege not available to all citizens. Acts violating constitutionally protected rights cannot be construed as official acts and instead constitute official misconduct.

91.  The administrative appeal process in this case, all controlled by the individual Defendants who at any time could have stopped the process and issued the license Ms. Clemons is entitled to hold, is both substantively and procedurally defective.

92.  From the public record of prior cases, and Ms. Clemons' case, it is reasonable to conclude Defendants conspired to create a knowingly prejudicial appeal process intentionally designed to exclude qualified candidates from licensure.  Short of going back to school for three

Complaint                                           29

years to obtain a Doctoral degree that would only then enable re-examination and recertification, it would be FUTILE for an out-of-state applicant for ARNP licensure not holding an advanced nursing Doctoral degree to apply for license or to appeal license denial. Defendants were well aware those few remaining "certificate trained" CRNA-ARNPs, by virtue of age alone, would not or could not undertake to pursue a Doctoral degree. Ms. Clemons was denied substantive due process because the process she was subjected to could not lead to a positive outcome.

93. Review of the record and related facts demonstrate that Defendants similarly deprived Ms. Clemons of procedural due process, including but not limited to: delaying by nearly two months advising Ms. Clemons of the July 5, 2018 decision to deny her application; by excluding Plaintiffs Lange's lawful participation in the settlement conference; by controlling the entire administrative process; by ignoring substantive legal arguments made by Plaintiffs; by arbitrarily and capriciously revising their legal position after Plaintiff's were unable to supplement their briefs in response; by knowingly asserting false statements in support of their legal position; by excluding important documents from evidence; by failing to make collateral public records available to Plaintiffs to enable an informed appeal; and through attrition by dragging proceedings out for months and months in a manner designed to force Plaintiffs to incur legal expenses while simultaneously depriving Plaintiff's income earning capability.

94. Defendant's sudden abandonment of process and reversal of position after becoming aware they were unlikely to prevail, through an invisible adjudicative mechanism (convening of the Nursing Program Approval Panel) totally unknown and unavailable to Ms. Clemons as the only apparent remedy – is classic defective procedural due process.

Complaint                                    30

95.     Defendant's sudden surrender of its case and subsequent issuance of a CRNA-ARNP license to Plaintiff Clemons followed by full rescission of the policy asserted by Defendants to deny licensure to Ms. Clemons constitutes a gross abuse of power, administrative process and admission of the tortious, arbitrary and capricious conduct of Defendants.

## THIRD CLAIM

*Violation of Article 1, Section 3, Washington Constitution, against Defendants Department of Health and Washington Nursing Care Quality Assurance Commission, and against Defendants Meyer, Soine and Bayne in their individual capacity; and against Defendants Meyer, Soine, and Bayne in their official capacity to the extent any individual Defendants assert their acts to be official acts.*

96.     Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

97.     Defendants acted in concert to deprive Plaintiff Clemons of Constitutionally protected property rights pursuant to Article 1, Section 3 of the Washington Constitution by denying Plaintiff Clemons substantive and procedural due process via the licensing and legal appeal proceedings imposed upon Ms. Clemons in connection with an unconstitutional denial of Ms. Clemons' right to licensure that would have otherwise enabled continued long term employment in her field of qualification.

98.     Plaintiffs assert a cause of action under authority of RCW 4.24.470(1); RCW 4.92.075; and RCW 4.92.090 for the constitutional torts of Defendants under the Washington Constitution in order to preserve rights to pursue claims against the Defendants that might be subject to challenge by Washington State Defendants under Amendment 11 of the United States Constitution.

MARY P. CLEMONS   SCOTT K. LANGE
P.O. BOX 189  14025 363RD AVE. SE
SULTAN, WASHINGTON 98294
(419) 560-2572  (425) 210-8531
Email: scottk_lange@comcast.net

99. Article 1, Section 3 of the Washington Constitution, unlike the 5th and 14th Amendments to the United States Constitution, is not subject to the restrictions of the 11th Amendment to the United States Constitution and therefore even without substantive *Gunwall* analysis the Washington Constitution provision is clearly broader than the due process protections afforded by the United States Constitution.

### FOURTH CLAIM

*Violation of Washington Employment Discrimination Statutes – RCW 49.60.180 and RCW 49.44.090, Against All Defendants*

100. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

101. The licensure policy asserted, and later withdrawn, against Plaintiff Clemons was known by Defendants to have the effect of barring employment in Washington State to a class of license eligible professionals all over age 40.   In the absence of any substantive basis for rejecting equivalent education qualifications solely because things were done differently in years long gone by equates to de facto employment discrimination on the basis of age.

102. The licensure policy asserted and later withdrawn by Defendants was known by all Defendants to have the effect of making Ms. Clemons ineligible for the specific CRH position she had applied for and that by denying licensure the CRH employment position sought would be lost to Ms. Clemons as a direct consequence of their wrongful acts.

103. The scant documentary evidence available explained the basis for excluding this class of qualified individuals was not that these individuals were not qualified, but that educational institutions were producing sufficient new graduates that the oldest CRNAs were no longer needed. WNCQAC's policy of excluding "certificate trained" CRNAs was explicitly designed to

Complaint 32

MARY P. CLEMONS   SCOTT K. LANGE
P.O. BOX 189  14025 363RD AVE. SE
SULTAN, WASHINGTON 98294
(419) 560-2572   (425) 210-8531
Email: scottk_lange@comcast.net

provide additional licensing and employment opportunities to younger individuals at the expense of older qualified CRNAs.

104. Among practicing CRNAs, those holding "certificates of completion" are the least likely to pursue the academic Doctorate of Nursing degree favored by WNCQAC. But "certificate" ARNPs, due to their experience, are likely if still practicing to be the most experienced, capable and qualified to practice under challenging conditions. Citing meaningless completion documents as a bona fide basis for exclusion from employment is the thinnest of veneers for WNCQAC's true policy of purging older practitioners in favor of younger professionals to replace them.

## FIFTH CLAIM

*Common Law Torts for: Interference with Plaintiff's Employment Rights; Personal Injury, including Intentional Infliction of Emotional Distress and Humiliation; Bodily Injury, including Aggravation of Chronic Arthritis Due to Stress and Depression; Against All Defendants*

105. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

106. Defendants at all time relevant to this action acted with malice toward Plaintiff Clemons, aware at all times that she was qualified for the CRNA license sought. Defendants knowingly subjected Plaintiff Clemons to extensive and expensive legal process knowing the longer she was unable to work the more likely she would capitulate and waive her constitutionally protected rights.

107. Defendants had specific knowledge through written communication by Ms. Clemons' employer CRH to Defendant Meyer that failure to issue Ms. Clemons' ARNP-CRNA license would result in loss of the position offered to Ms. Clemons by CRH.

Complaint  33  MARY P. CLEMONS  SCOTT K. LANGE
P.O. BOX 189  14025 363RD AVE. SE
SULTAN, WASHINGTON 98294
(419) 560-2572  (425) 210-8531
Email: scottk_lange@comcast.net

1
2
3
4   108. A function that should encourage and welcome quality seasoned healthcare professionals like Ms. Clemons to serve Washington healthcare consumers was conducted by Defendants as a punitive process drawn out by Defendants in the hope of getting Plaintiff to
5   abandon her constitutionally protected rights.  Such treatment by Defendants reflects the other
6   primary function of WNCQAC, the disciplinary function - a harsh, adversarial and autocratic
7   function protected by absolute immunity and lacking accountability.  Plaintiff Clemons was
8   treated by WNCQAC as if she was a criminal, not even entitled to be informed about the basis
9   for exclusion from CRNA licensure in Washington.
10
11   **SIXTH CLAIM**

12   *Silent Withholding or Public Records in Violation of RCW 42.56; Against Defendant*
13   *Department of Health*

14   109. Plaintiff incorporates the preceding paragraphs by reference as if fully rewritten herein.

15   110. Plaintiffs have reason to believe that despite claims by the Department of Health that all
16   requested public records have been provided in response to public records requests in connection
17   with this matter by Plaintiff Lange, that in fact the Department of Health has withheld, without
18   disclosure, other public records that should have been disclosed and/or produced in response to
19   the requests made by Mr. Lange.  Specifically, members of the Washington Association of Nurse
20   Anesthetists have provided Plaintiffs documents and summaries of events that indicate public
21   records, including those that may be on personal media of Defendants, have not been disclosed
22   or produced as required by law.
23

24   111. Failure to disclose or produce public records responsive to a request for public records
25   made pursuant to RCW 42.56 is a violation subject to equitable relief and monetary penalties.
26

Complaint                                      34                    **MARY P. CLEMONS   SCOTT K. LANGE**
                                                                    P. O.  BOX  189  14025  363RD  AVE.  SE
                                                                         SULTAN, WASHINGTON 98294
                                                                         (419) 560-2572   (425) 210-8531
                                                                    Email: scottk_lange@comcast.net

1

2

3

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

4

5

6

7

8

9

112. On Plaintiff's first claim, a judgment for compensatory damages including but not limited to lost marital community income and associated benefits, and unnecessary expense in maintaining a residence in Ohio, including travel between Ohio and Washington, in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 USC 1988, and any other statutory or common law basis provided for by law, including punitive damages of $5 million, against Defendants Meyer, Soine, and Bayne;

10

11

12

13

14

15

16

113. On Plaintiff's second claim, a judgment for compensatory damages including but not limited to lost marital community income and associated benefits, and unnecessary expense in maintaining a residence in Ohio, including travel between Ohio and Washington, in an amount to be determined at trial, plus reasonable attorney fees pursuant to 42 USC 1988, and any other statutory or common law basis provided for by law, including punitive damages in the amount of $5 million, against Defendants Meyer, Soine, and Bayne;

17

18

19

20

21

22

114. On Plaintiff's third claim, a judgment for compensatory damages including but not limited to lost marital community income and associated benefits, and unnecessary expense in maintaining a residence in Ohio, including travel between Ohio and Washington, in an amount to be determined at trial, plus reasonable attorney fees as provided for by statute or common law, against all Defendants;

23

24

25

26

115. On Plaintiff's fourth claim, a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees as provided for by statute including RCW Title 49, or by common law, against WNCQAC and Defendants Meyer, Soine and Bayne;

Complaint

35

116. On Plaintiff's fifth claim, a judgment for compensatory damages in an amount to be determined at trial, plus reasonable attorney fees as provided for by statute or common law, against WNCQAC and Defendants Meyer, Soine and Bayne;

117. On Plaintiff's sixth claim, equitable relief in the form of an order by the Court for Defendant Department of Health to disclose and/or produce all public records, including those located on personal media of Defendants, responsive to all past requests made by Plaintiffs in connection with this matter, and subject to the discretion of the Court appropriate monetary penalties, together with attorney fees, for silent withholding of records in violation of RCW 42.56.

118. An award of costs and expenses against all Defendants; and

119. Any and all other relief this Court may deem appropriate.

THE UNDERSIGNED, under penalty of perjury under the Laws of the State of Washington, state: We are the Plaintiff(s) herein; we certify that we have read the within and foregoing COMPLAINT, and to the best of our knowledge, information and belief, formed after a reasonable inquiry, said pleading is well grounded in fact and is warranted by existing law or good faith argument for the extension, modification, or reversal of the existing law; and that said pleading is not being interposed for any improper purpose such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

Signed at Sultan, Washington on September 13, 2021

Complaint

36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Respectfully Submitted,


s/Mary P. Clemons
14025 – 363rd Ave SE
P.O. Box 189
Sultan, WA 98294
Telephone: (419)-560-2572
Email: maryclemonscrna1@yahoo.com


s/Scott K. Lange
14025 – 363rd Ave. SE
P.O. Box 189
Sultan, WA 98294
Telephone: (425)-210-8531
Email: scottk_lange@comcast.net

Complaint

37